IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEROME BARROW | ) | CASE NO. 1:16-CV-00923 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | DEFENDANTS' MOTION FOR |
| CITY OF CLEVELAND, ET AL., | ) | ATTORNEYS' FEES AND COSTS |
| | ) | |
| Defendants. | ) | |

Now comes former Defendants Patrick Stephens, Martin Flask, and Michael McGrath, and current Defendant the City of Cleveland (collectively referred to herein as "Defendants"), by and through their respective counsel, and respectfully submit the foregoing Motion For Attorneys' Fees and Costs.

Respectfully submitted,

BARBARA A. LANGHENRY (0038838)
Director of Law

By: s/*Michael J. Pike*
MICHAEL J. PIKE (0074063)
Assistant Director of Law
City of Cleveland, Department of Law
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114
Tel: (216) 664-2800
Fax: (216) 664-2663
Email: MPike@city.cleveland.oh.us
*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of February, 2017, a copy of **Defendants' Motion For Attorneys' Fees and Costs** was electronically filed. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<div style="text-align:right">

s/*Michael J. Pike*
Michael J. Pike (0074063)
Assistant Director of Law
City of Cleveland, Department of Law
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114
Tel:  (216) 664-2800
Fax:  (216) 664-2663
Email: MPike@city.cleveland.oh.us
*Attorney for Defendants*

</div>

## MEMORANDUM IN SUPPORT

### I. INTRODUCTION

Defendants seek to recover the attorneys' fees and costs needlessly incurred by them in investigating and defending, and eventually being forced to try a case and defend multiple claims against multiple parties that had no evidentiary support whatsoever and which Plaintiff continued to pursue through trial despite repeated attempts by Defendants to remove several claims and parties from the suit.

Throughout his Complaint, Plaintiff made several far sweeping allegations against all four Defendants (The City of Cleveland, Mr. Flask, Mr. McGrath, and Mr. Stephens) which had no evidentiary support at any time prior to or during the course of this litigation or through trial; or which were so remote in time so as to be time-barred by the applicable statute of limitations rendering them frivolous, unreasonable, without foundation, or brought in subjective bad faith entitling Defendants to an award of reasonable attorneys' fees and costs.

From the time of filing through the day of trial in this matter, Plaintiff sought to recover against Mr. Stephens individually and in his official capacity on the following separate and distinct claims:

1) Violations of Plaintiff's First Amendment rights
2) Violations of Plaintiff's Due Process rights
3) Violations of Plaintiff's Equal Protection rights
4) Violations of the Civil Rights Act of 1870 as amended, 42 U.S.C. §1981
5) Violations of the Civil Rights Act of 1871 as amended, 42 U.S.C. §1983
6) Violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5(f)
7) Violations of the Ohio Civil Rights Act, O.R.C. §§4112.01, et seq.[1]
8) Unidentified pendant state law claims; and
9) Punitive damages.

With regard to Mr. McGrath, Plaintiff sought to recover against him individually and in his official capacity on the following separate and distinct claims:

1) Violations of Plaintiff's First Amendment rights
2) Violations of Plaintiff's Due Process rights
3) Violations of Plaintiff's Equal Protection rights
4) Violations of the Civil Rights Act of 1870 as amended, 42 U.S.C. §1981
5) Violations of the Civil Rights Act of 1871 as amended, 42 U.S.C. §1983

---

[1] Complaint ¶¶ 8, 55(A), ECF. Doc. 1.

6) Violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5(f)
7) Violations of the Ohio Civil Rights Act, O.R.C. §§4112.01, *et seq.*[2]
8) Unidentified pendant state law claims; and
9) Punitive damages.

With regard to Mr. Flask, Plaintiff sought to recover against him individually and in his official capacity on the following separate and distinct claims:

1) Violations of Plaintiff's First Amendment rights
2) Violations of Plaintiff's Due Process rights
3) Violations of Plaintiff's Equal Protection rights
4) Violations of the Civil Rights Act of 1870 as amended, 42 U.S.C. §1981
5) Violations of the Civil Rights Act of 1871 as amended, 42 U.S.C. §1983
6) Violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5(f)
7) Violations of the Ohio Civil Rights Act, O.R.C. §§4112.01, *et seq.*[3]
8) Unidentified pendant state law claims; and
9) Punitive damages.

With regard to the City of Cleveland, Plaintiff sought to recover against it on the following separate and distinct claims:

1) Violations of Plaintiff's First Amendment rights
2) Violations of Plaintiff's Due Process rights
3) Violations of Plaintiff's Equal Protection rights
4) Violations of the Civil Rights Act of 1870 as amended, 42 U.S.C. §1981
5) Violations of the Civil Rights Act of 1871 as amended, 42 U.S.C. §1983
6) Violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5(f)
7) Violations of the Ohio Civil Rights Act, O.R.C. §§4112.01, *et seq.*[4]
8) Unidentified pendant state law claims

As pled, the total number of statutory claims alleged against the Defendants total thirty-five claims (35). With regard to most, if not all, of these substantive claims Plaintiff alleged separate discrimination and retaliation allegations for each claim, which increased exponentially the number of claims asserted against the Defendants which they had to prepare to address ultimately at trial.[5]

---

[2] Complaint ¶¶ 8, 55(A), ECF. Doc. 1.
[3] Complaint ¶¶ 8, 55(A), ECF. Doc. 1.
[4] Complaint ¶¶ 8, 55(A), ECF. Doc. 1.
[5] Complaint ¶¶ 1, 2, 5-7, 11, 15-17, 21, 23, 27, 28, 31, 36, 39, 52, 55. ECF. Doc. 1

Prior to trial, Defendants sought leave to file a motion for summary judgment in this matter and to move the trial date to allow for briefing so as to resolve many, if not all, of the pending claims. (ECF Doc. No. 32). Plaintiff opposed that motion. (ECF Doc. No. 33).

During the telephone conference with all parties and the Court on January 8, 2018 regarding the Motion for Leave to File a Summary Judgment Motion, Defendants sought to narrow the issues for trial by dispensing with most of the claims and requested a dismissal of the individual defendants. (ECF Docs. No. 36; Ex. A - Affidavit of Stacey Pellom). After the phone conference, Defendants believed based upon opposing counsel's statements, and as reflected in the Court's Handwritten Minutes of that phone conference (Id.), that Plaintiff had agreed to dismiss the discrimination claims and was going to proceed solely on the retaliation claim related to the 1st EEOC charge. (Id). The next day, Defendants sought to confirm their understanding and requested that Plaintiff dismiss those claims he was not pursuing. (Ex. A). Plaintiff refused to narrow any of the issues for trial except with regard to the claim that the 2011 captain's promotional test was discriminatory. (Ex. A).

In light of the foregoing, which Defendants interpreted as a reversal of Plaintiff's position, Defendants requested a telephone conference with the Court, which was held on January 16, 2018. During the telephone conference, Defendants again expressed their belief that all that was going forward at trial was the retaliation claim related to the 1st EEOC charge and again expressed their request to Plaintiff to dismiss both the discrimination claims and the individual Defendants from the case. (Ex. A). Plaintiff refused to do so again and indicated he was going forward at trial on both retaliation and discrimination on all Counts against all parties, with the sole exception being the allegation that the promotional testing process was discriminatory. (ECF Doc. No. 37, Ex. A).

Despite attempts by Defendants to narrow the issues for trial and streamline the dozens of claims alleged in the Complaint, Plaintiff persisted through trial seeking to move forward on all Counts against all defendants which, in turn, required all Defendants to prepare for all claims for trial and to prepare and

5

file numerous motions in limine on these issues seeking the exclusion of the meritless and/or time barred claims at trial.[6]

At the hearing with Court on the morning of trial on January 29, 2018, there was no evidence presented or alleged whatsoever to support any of Plaintiff's discrimination claims or those claims under Civil Rights Act of 1870 as amended, 42 U.S.C. §1981, Civil Rights Act of 1871 as amended, 42 U.S.C. §1983, Ohio Civil Rights Act, O.R.C. §§4112.01, *et seq.*, under any the Due Process Clauses of the 5th and 14th Amendment, under the Equal Protection Clause of the 14th Amendment , or under any other unidentified pendant state law claims.[7]

In fact, Plaintiff's counsel admitted at this hearing that he had no evidence to support most of these claims and that his §1981 and §1983 were either barred as a matter of law and/or time-barred by the applicable statute of limitations. For example, when the Court asked about the §1981 claims he had asserted against all Defendants and maintained through the morning of trial, Plaintiff's counsel admitted without any attempt to defend the maintenance of the claim that those claims were barred as being subsumed into the §1983 claims. (ECF Doc. 65, pp. 12-13).

> THE COURT: Okay. Now, what else? You're abandoning your 1981 claim because that's subsumed into the 1983 claim.
>
> MR. FRIEDMAN: I understand. And I don't disagree with the position that the defendant has taken.

(ECF Doc. 65, pp. 13). Then with regard to Plaintiff's §1983 claims, including his Equal Protection and Due Process claims, Plaintiff's counsel, after trying very hard to avoid this issue and conferring with his client, finally relented and admitted there was no alleged conduct during the relevant statutory time frame to support any §1983 claim.

> THE COURT: Okay. All right. Now, what's your 1983 claim?

---

[6] Defendants incorporate by reference herein their previously filed motions in limine (ECF Docs. Nos. 41, 42, 43, 44), as if fully rewritten herein in further support of their request for attorneys' fees and costs.
[7] Including the litany of claims relating to conduct that allegedly dated back to 1979, which the Court also excluded at the pre-trial hearing as time-barred and/or irrelevant.

MR. FRIEDMAN: Well, our 1983 claim is both equal protection and First Amendment. 1983 is the vehicle through which we're asserting both claims. The First Amendment was again a pattern and practice of engaging in a matter of public concern, his concern about racial discrimination that he was subjected to and his colleagues were subjected to, as well as –

THE COURT: Well, he can't complain about his colleagues. He can complain about him.

MR. FRIEDMAN: Well, that's true. That's -- actually, he can complain about it. But whether or not it's protected speech under the First Amendment is different. He can identify -- black officers stuck together when, for example, he was charged with writing city council about –

THE COURT: That's 1995. 1983 goes back two years.

MR. FRIEDMAN: But it's the background leading up to what happened with the statute.

THE COURT: I'm with you on that but – all right. **Tell me what happened from 2014, April of 2014, to April of 2016 that would be covered under 1983.**

MR. FRIEDMAN: Well, after he was transferred away from Mr. Stephens, he went back to vice and ultimately retired in July of 2016. **Nothing really happened.**

THE COURT: So what do you have as a 1983 claim then?

MR. FRIEDMAN: Our 1983 claim essentially goes to the point where he is transferred. He was out from under Mr. Stephens after the chief permitted him to transfer to the Fourth District.

THE COURT: I'm not intentionally being difficult with you, but --

MR. FRIEDMAN: I understand.

THE COURT: -- but if the -- 1983 has a two-year statute of limitations, and this case was filed in April of 2016, correct?

MR. FRIEDMAN: Well, it was filed, yes.

THE COURT: And so I'm asking you: From April of 2014 through April 2016, what acts of discrimination were committed by any of the defendants?

MR. FRIEDMAN: **The most important discrimination preceded those dates.**

THE COURT: **So then you have nothing then that happened during that two-year period.**

MR. FRIEDMAN: Well, I'd like an opportunity to speak to my client, **but I don't recall that there were any events between 2014 and 2016.** There may very well be. Can I have one moment, Judge?

7

THE COURT: Sure. Do you have something you'd like to add to this?

MS. PELLOM: We're unaware of any allegations occurring between 2014 to when he retired in 2016. The transfer out from under his former commander, Commander Stephens, that occurred on April 1st of 2013. So he had already transferred to the Fourth District. Been there for a year by the time the statute starts to run. If there's anything produced now, this would be news to us. Nothing was produced in discovery, and there were no answers regarding that provided in Mr. Barrow's deposition.

THE COURT: Okay.

MR. FRIEDMAN: **There's nothing, Your Honor.**

THE COURT: Okay. All right. So as I understand, the case is the retaliation claim by the EEOC filing and the removal or taking away of plaintiff's automobile, his transfer to A platoon, and his failure to be able to receive overtime.

MR. FRIEDMAN: I understand.

THE COURT: Okay. And then on the 4112 claim, we haven't heard any discrete -- maybe we'll hear during the trial some discrete act or acts of discrimination.

MR. FRIEDMAN: Yes.

THE COURT: Correct? **And then under the 1983 claim, there isn't anything. So you're going to abandon the 1983 claim.**

MR. FRIEDMAN: Well, 1983 is used to protect his speech and complaining about conditions.

THE COURT: Okay. But, I mean, did something -- I asked you that question.

MR. FRIEDMAN: Right.

THE COURT: **Did something happen between 2014 and 2016 –**

MR. FRIEDMAN: **No –**

THE COURT: -- where he –

MR. FRIEDMAN: **-- it did not, Your Honor.**

THE COURT: **Well, you're kind of time-barred, aren't you?**

MR. FRIEDMAN: **Understood.**

(ECF Doc. No. 65, pp. 37-41, emphasis added). With respect to the discrimination claims under O.R.C. 4112, while Plaintiff disagreed with controlling case law, there was no question the law of the case set

8

forth by the Ohio Supreme Court in *Dworning v. City of Euclid*, 119 Ohio St. 3d 83 (2008), is that Plaintiff's discrimination claims were barred as a matter of law as Plaintiff did not exhaust his administrative remedies pursuant to his Collective Bargaining Agreement with the City of Cleveland.

> THE COURT: Okay. Now, you say there are other -- how about are you proceeding on other – under other statutes or provisions?
>
> MR. FRIEDMAN: Yes, Your Honor.
>
> THE COURT: Okay. Under 4111, I'll let the defense argue because aren't you supposed to exhaust your administrative remedies first under –
>
> MR. FRIEDMAN: 4112 is the state statute that permits us to proceed both against the employer and the individual.
>
> THE COURT: Right. But don't you have to exhaust your remedies first?
>
> MR. FRIEDMAN: No, no. The way the statute is written, Your Honor, under 4112.99, I think the legislature intended to require administrative exhaustion. But unlike Title VII, 4112 does not require administrative exhaustion. You can go straight into court, either in the Court of Common Pleas or Federal Court, under .99.
>
> THE COURT: You can bypass the CBA?
>
> MS. PELLOM: And, Your Honor, our response as contained in our trial brief is that under the case of Dworning versus City of Euclid where there contains a provision in the CBA regarding discrimination, that that is then subject to the grievance process, so plaintiff would have failed to exhaust his administrative remedy. Specifically for only the Ohio laws, not Title VII.
>
> THE COURT: That's what it says.
>
> MR. FRIEDMAN: I don't accept that – I understand the argument, and I think the facts in the Euclid case are -- I don't believe it was a race case and I don't believe that -- I think that was the case where the individual had started administratively then withdrew it, then filed. And I think the argument that was made in that case was that once you start the administrative process, you have to complete it. Actually, I think the decision is a wrong one, but I don't think that that's the law.
>
> THE COURT: It's the law if they're a member of a collective bargaining unit. That's what the case says. If you're a member of a collective bargaining unit, you know, you've got to exhaust that first.

ECF Doc. 65, pp. 11-13.

Moreover, despite repeated requests by the Court to state the basis of his O.R.C. 4112 discrimination claims, Plaintiff could not enunciate any specific treatment against Mr. Barrow that would support his allegations of discrimination under O.R.C. 4112.

> THE COURT: That's not discrimination against him.
>
> MR. FRIEDMAN: I agree. It's constitutional. If he was retaliated against for complaining about governmental misconduct and it was a matter of public concern, which it was, that is protected speech. That's not 4112. You're asking me about 4112.
>
> THE COURT: I am.
>
> MR. FRIEDMAN: And ultimately it led up to retaliation. But, you know, the context of his experience as a police officer was saturated by racially discriminatory behavior by his employers.
>
> THE COURT: **But you still haven't told me anything in particular that during those** –
>
> MR. FRIEDMAN: Well, I can take you through the history. We can start about white officers getting uniforms –
>
> THE COURT: We're not going to talk about 1979 here. So I'm talking about from the year 2000 to 2016. **Within the statute of limitations period.**
>
> MR. FRIEDMAN: Well, I understand that, Your Honor, but without that background, what happened after 2000 –
>
> THE COURT: Well, if something happened in 1979 doesn't then necessarily follow that it occurred in 2000 unless you have evidence of it.
>
> MR. FRIEDMAN: I understand. I understand.
>
> THE COURT: **That's all I'm saying. I mean, I just asked a simple question.**
>
> MR. FRIEDMAN: **I understand. I understand.**
>
> THE COURT: **And I haven't heard an answer yet.**
>
> MR. FRIEDMAN: Well, the discriminatory actions by the employer were reflected in a number of things. I mean, he complained about these problems; **his supervisors were unresponsive to him.**
>
> THE COURT: **But that's not discrimination if they're unresponsive.** It's something happened to him because of his race.
>
> MR. FRIEDMAN: Well, it did. When he complained about the difference in treatment, they were unresponsive to him.

10

> THE COURT: That's your 4112 claim?
>
> MR. FRIEDMAN: It is equivalent to our Title VII claim.

(ECF Doc. No. 65, pp. 35-37; emphasis added). No evidence of discrimination supporting recovery under O.R.C. 4112 *et seq.* was ever presented at trial either during Plaintiff's case in chief, leading the Court to dismiss these claims against all parties. (ECF Doc. No. 66, pp. 282-283).

Then, after the close of Plaintiff's case in chief, Defendants moved under F.R.C.P. 50 for judgment as a matter of law as to all remaining claims. The Court found as a matter of law that Plaintiff had not proven a prima facie case on any of his claims against the individual defendants Mr. Stephens, Mr. Flask, or Mr. McGrath and dismissed them from the case entirely. (ECF Doc. 66, pp. 282-283).

> THE COURT: Okay. Couple things. First, I think qualified immunity applies based on the evidence. I'm bound by the evidence that was presented here in court, not speculation or assuming things. So qualified immunity applies to Mr. McGrath and Mr. Flask and Mr. Stephens at this point.
>
> In addition to that, there is no evidence that I can see in this case that would indicate that either Mr. Stephens or Mr. Flask or Mr. McGrath engaged in any form of retaliation.
>
> First of all, there's no evidence that they even knew he had filed the complaint.
>
> And secondly, even if they knew, the scant evidence here, really only based on the exhibits and the testimony of the plaintiff, is insufficient as a matter of law to say that any one of those three gentlemen engaged in any kind of potential retaliation. It's too big of a stretch.
>
> So finally, I think we -- I'll overrule -- I'll grant the motion 50 as to the three -- those three defendants. And I'm going to take it under advisement as to the City of Cleveland on the retaliation issue.
>
> And the issue as I see it on retaliation, really, I mean, I look at the charge -- and again, it says that on September the 6th that he had his vehicle taken away from him and on -- he missed overtime in August and that he was -- but he was never transferred to A platoon. So I don't know how that can be a ground. Right? I mean, you'd have to agree with that.
>
> MR. FRIEDMAN: I understand.
>
> THE COURT: He wasn't transferred. So it would just be the lack of failure to obtain overtime and the taking away of the vehicle. Okay? So that's what we'll go to the jury on.

11

ECF Doc. 66, pp. 282-283. As the Court correctly found in addition to the application of qualified immunity, there was no evidence that any three of the individual Defendants knew that Plaintiff had filed the EEOC complaint. Id. Moreover, there was insufficient evidence as a matter of law that, even assuming any of these three individual defendants knew about the charge, that anyone of them took any retaliatory conduct against Plaintiff. (Id). It necessary follows that there was also absolutely no evidence to support the claims for punitive damages alleged in this case as well. Put differently, all of the claims against the three individual defendants were at all times groundless, meritless, and/or frivolous and which may be determined by the Court in light of the utter lack of any evidentiary support for these claims, pursued in bad faith meriting an award of attorneys' fees and costs in their favor.

With respect to The City of Cleveland, it is equally clear that all of Plaintiff's claims (except perhaps the sole claim for retaliation under Title VII)[8] were groundless, meritless, and/or frivolous allowing for an award of attorneys' fees and costs in its favor as well as the prevailing party on all claims except the Title VII claim for retaliation against the City of Cleveland.

## II.    LAW AND ARGUMENT

The general rule under Federal Law is that a Court may award attorneys and costs to the prevailing parties in a case such as this where plaintiff has sought recovery under sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C.A. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. § 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or section 13981 of this title. This award is available to both Plaintiffs and Defendants.

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C.A. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], the

---

[8] Defendants dispute that sufficient evidence was adduced at trial to support the verdict of the jury and intend to file a renewed motion for judgement as a matter of law within the time allowed under F.R.C.P. 50. In the event the Court should grant that motion, The City of Cleveland would request recovery based upon that statute as well.

> Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. § 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

42 U.S.C.A. 1988. There can be no dispute that the three individual defendants were the prevailing party with regard to the claims asserted against them by Plaintiff.

> In Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), we held that the defendant in an action brought under Title VII of the Civil Rights Act of 1964 may recover attorney's fees from the plaintiff only if the District Court finds "that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Id., at 421, 98 S.Ct., at 700.

*Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980).

In determining whether a suit is frivolous, "a district court must focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." *Jones v. Texas Tech University*, 656 F.2d 1137, 1145 (5th Cir.1981). *Sullivan v. School Bd. of Pinellas Cty.*, 773 F.2d 1182, 1188–89 (11th Cir.1985). "Factors considered important in determining whether a claim is frivolous also include: (1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits.[9] See, e.g., *E.E.O.C. v. Kimbrough Investment Co.*, 703 F.2d 98, 103 (5th Cir.1983); Jones, 656 F.2d at 1146. While these general guidelines can be discerned from the case law, they are general guidelines only, not hard and fast rules. Determinations regarding frivolity are to be made on a case-by-case basis." *Sullivan v. School Bd. of Pinellas Cty.*, 773 F.2d 1182, 1189 (11th Cir.1985).

---

[9] With regard to these factors it is clear that 1) plaintiff did not establish a prima facie case against the individual defendants on any claims or against the City of Cleveland on all but one (the Court reserved ruling on the final claim which is still pending), 2) that offers to settle the matter well before trial had been made by all defendants at the settlement conference with the Court, and 3) the Court dismissed most of these claims before trial, and all but the one claim against the City of Cleveland that is under advisement with the Court were dismissed by the Court at the close of Plaintiff's case-in-chief.

13

In the instant matter, it is clear that when reviewing the case as it pertains to the three individual defendants, the case was groundless, without merit, and frivolous. As the foregoing portions of the record indicate, Plaintiff marshalled no evidence before or at trial in support of his claims against these three individuals, namely Mr. Flask, Mr. Stephens, and Mr. McGrath. It is also without dispute that Plaintiff admitted on the morning of trial that the Section 1981 claims were without merit and that the Section 1983 claims were time barred as a matter of law.

Moreover, the Court held as a matter of law that qualified immunity applied to the defendants and "there is no evidence that I can see that would indicate that either Mr. Stephens or Mr. Flask or Mr. McGrath engaged in any form of retaliation." (ECF Doc. No. 65, pp. 282-283). If that were not enough, "there's no evidence that they [McGrath, Stevens, and Flask] even knew he had filed the complaint." Id. Finally, even if these three defendants did know about the EEOC Complaint, "based on the exhibits and the testimony of the plaintiff, is insufficient as a matter of law to say that any one of those three gentlemen engaged in any kind of potential retaliation. It's too big of a stretch." (Id). There can be no better example of a groundless and meritless case where a Plaintiff filed and maintained a case up to and through his case in chief knowing he had no evidence to support the claims against the adverse parties.

It should also be noted that Plaintiff chose not to depose two of the individual defendants, namely Mr. McGrath and Mr. Flask. He likewise did not call any of them in his case in chief. So, this is not a situation where the Plaintiff hoped to find evidence about the parties through discovery. Instead, this is a case where Plaintiff chose to primarily base all of his claims against these parties on his own speculative testimony and offered no evidence in support of a prima facie case against them. In doing so, he maintained his groundless claims against these individuals up to and throughout trial knowing full well there was no evidence to support those claims. This is all the more troubling as it pertains to these individual defendants who had the constant worry and concern of uninsurable punitive damages claim being entered against them putting their families' financial well-being and future in perilous jeopardy for no legitimate reason and without merit or any evidentiary support.

14

After providing an opportunity to Plaintiff through his counsel at the pre-trial hearing on January 29, 2018, to cite support for his numerous claims, the Court dismissed prior to trial all claims against all parties except the Title VII retaliation claims and discrimination under O.R.C. 4112[10] (despite Plaintiff's failure to point to any specific alleged conduct on during the pre-trial hearing with the Court in support). This would necessarily include the claims under Section 1983, Section 1981, as well as his claims for violation of his Due Process and Equal Protection rights. No other "pendant state law claims" were ever advanced against any party either. Again, Plaintiff maintained all these claims through trial despite Defendants repeated requests to dismiss these claims several weeks before trial.

Of the several dozen claims asserted by Plaintiff against all the defendants, a single finite claim against a single defendant (The City of Cleveland) survived[11]. Three of the four Defendants were summarily dismissed as a matter of law. When the foregoing is combined with Plaintiff's admissions at the pre-trial hearing that there was no evidence to support most of the claims or that they were time-barred (i.e. the § 1981 claims, the § 1983 claims), with the repeated attempts by Defendants to get plaintiff to dismiss these claims weeks prior to trial to obviate the need to prepare to defend those claims, Defendants maintain that each one of them is a prevailing party under the relevant statutes and entitled to an award of attorneys' fees and costs for having to prepare and try a case that was, meritless, groundless, and/or frivolous.

## III.   FEES AND COSTS

Attached hereto as Exhibit B is an itemized listing of the time expended by Defendant in defending the claims asserted by Plaintiff in this matter. These figures include 44.5 hours by Ms. Aikaterini Houston in engaging in discovery and pleading practice prior to trial preparations beginning; 200.2 hours by lead trial counsel Ms. Stacey Pellom in conducting discovery and preparing for trial as

---

[10] The Court later dismissed all the O.R.C. 4112 discrimination claims against all parties despite Plaintiff's promise at the pre-trial hearing that there would be discrete acts of discrimination against him proffered at trial.

[11] Again, subject to The City of Cleveland's pending motion for judgement as a matter of law which the Court reserved ruling on and took under advisement.

15

well as attendance at trial; 175.9 hours by Mr. Michael Pike in preparing for trial and attendance at trial; and 113.25 hours by Mr. Brandon Brown in assisting in the Defendants defense both before and during trial.

In this case, Defendants had to prepare for dozens of claims lodged against multiple defendants and in light of this, having multiple attorneys working on the matter is reasonable under in the circumstances. Additionally, given the breadth and depth of allegations made by Plaintiff in his Complaint, in his discovery responses, and during his deposition,[12] and the need to prepare to defend allegations that go back decades to the 1970s, the number of hours spent in total by all attorneys is also reasonable. In fact, when the total number of hours is divided amongst the number of Defendants in this matter, namely four (4), the hours expended per Defendant is on par to the number of hours recently submitted by opposing counsel, Mr. Friedman, in his Motion for Fees and Costs. Specifically, Plaintiff's counsel claims to have spent 137 hours over three years preparing his case and through trial while the per defendant average for hours expended by the Defendants is less than that that amount at 134 hours.

Attached hereto as Exhibit C are Affidavits from experience trial counsel in the area establishing that the requested hour rates of $300/hour for senior attorneys with similar experience to Ms. Pellom, Mr. Pike, and Ms. Houston in civil rights cases and $150/hour for a new attorney such as Mr. Brown is reasonable as are the total number of hours expended. With regard to the fees, Defendants seek recovery of the following[13]:

| | |
|---|---|
| Ms. Houston (44.5 hours x $300/hour) | $13,550.00 |
| Ms. Pellom (200 Hours x $300/hour) | $60,000.00 |
| Mr. Pike (175 Hours x $300/hour) | $52,500.00 |
| Mr. Brown (113 Hours x $150/hour) | $16,950.00 |
| **Total Fees** | **$143,000.00** |

---

[12] See Defendants' Motions in Limine filed in this matter, ECF Docs. No. 41-44.
[13] When viewed in light of the nearly $800/hour rate Plaintiff's counsel is requesting in his motion (ECF Doc. No. 69), the foregoing requested rates are all the more reasonable.

Similarly, attached hereto as Exhibit D are the costs incurred by the Defendants in defending the multitude of claims asserted by Plaintiff against four defendants in this matter. These costs include the following:

| | |
|---|---|
| Court reporter for Plaintiff's Deposition | $247.50 |
| Deposition transcript of Jerome Barrow | $802.81 |
| Deposition transcript of Patrick Stephens | $517.90 |
| Attendance at Deposition of Patrick Stevens in FL | $1195.59 |
| Air Travel for Patrick Stevens to attend trial | $939.00 |
| Stephen Rental Car | $253.96 |
| Trial Transcript | $2415.30 |
| **Total Costs** | **$6372.06** |

These costs are reasonable in light of the complexity of the case and length the matter was pending. Additionally, the three largest expenses in the case were a trip to Florida to prepare and attend the deposition of former defendant Patrick Stevens (which is where he currently resides since his retirement), Mr. Stevens air travel to Cleveland to attend trial, and the trial transcript cost needed to prepare this motion and evaluate other potential motions including an appeal.[14]

---

[14] In the event the Court would request additional information in support of the reasonableness of the foregoing fees, Defendants request that the Court decide the issue of liability for fees first before receiving submissions on the value of the services pursuant to F.R.C.P. 54(C).

IV. **CONCLUSION**

For the reasons set forth herein, Defendants respectfully requests that the Court enter an order in favor of each defendant for an award of reasonable attorneys' fees and costs in accordance with the amounts and set for the herein or such other amounts as the Court deems reasonable and proper. In the alternative, Defendants request a hearing on the issue of all attorneys' fees and costs with the Court.

Respectfully submitted,

BARBARA A. LANGHENRY (0038838)
Director of Law

By: s/*Michael J. Pike*
MICHAEL J. PIKE (0074063)
Assistant Director of Law
City of Cleveland, Department of Law
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114
Tel: (216) 664-2800
Fax: (216) 664-2663
Email: MPike@city.cleveland.oh.us
*Attorney for Defendants*